[Civil No. 1835.   Filed December 7, 1920.]

[193 Pac. 833.]

In the Matter of the Bonds of Drainage District
No. 4, in and for the County of Maricopa, State
of Arizona. W. S. STEVENS and E. C.
STEVENS, Copartners Doing Business Under
the Firm Name and Style of STEVENS COT-
TON COMPANY, and ETHEL R. STEVENS,
Wife of W. S. STEVENS, and NELL STEVENS,
Wife of E. C. STEVENS, Appellants, v. A. F.
LAFFERTY, CARL N. TOWNER, and J. G.
SCHWEIKART, as Members of and Constitut-
ing the Board of Directors of Drainage District
No. 4, in and for the County of Maricopa, State
of Arizona, Appellees.

1. CONSTITUTIONAL LAW—ASSESSMENT OF BENEFITS ACCORDING TO
VALUE OF PROPERTY, NOT TAKING WITHOUT DUE PROCESS.—Civil
Code of 1913, title 55, chapter 5, providing for assessment of benefits
for a drainage district according to the value of the property, is
not in violation of Constitution of the United States, Amendment
14, section 1, of Constitution of Arizona, article 2, section 4,
as working a taking of property without due process of law,
merely because a land owner receiving little benefit might be re-
quired to pay much more than a land owner receiving great benefit,
since the mode of assessment is for the legislature.

2. EVIDENCE—COURT WILL TAKE JUDICIAL NOTICE THAT LANDS IN
A PARTICULAR VALLEY WERE ALKALI AND WATER-LOGGED.—The
Supreme Court will take judicial notice that lands in a particular
valley had become alkali and water-logged, and so should be
drained.

3. DRAINS—ASSESSMENT ON LANDS NOT BENEFITED IS VOID.—The
theory which underlies assessment for a drainage improvement is
that the property is benefited, and should bear a proportion of the
cost corresponding to the benefit, but an assessment on property
not benefited is void.

1. On necessity of special benefits to sustain assessment for public
improvement, see note in 14 L. R. A. 755.

Validity of rule of assessment for drainage improvement, note, 2
A. L. R. 625.

4. DRAINS—LEGISLATURE MAY CREATE TAXING DISTRICT, AND DELEGATE AUTHORITY TO LOCAL BOARDS.—The legislature may create taxing districts for the purpose of local improvements such as drainage, and may delegate that authority to boards or commissions.

5. DRAINS—QUESTION OF BENEFIT IS ONE OF FACT, BUT ASSESSMENT CANNOT BE IMPOSED ARBITRARILY.—Body to which the question of benefits is delegated may not act arbitrarily, and impose a tax with disregard to the benefit to be derived.

6. APPEAL AND ERROR—FINDING SUPPORTED BY EVIDENCE NOT DISTURBED.—A finding of the trial judge is entitled to high consideration, and, unless without any reasonable evidence to support it, will not be disturbed on appeal

7. DRAINS—EVIDENCE HELD TO SHOW THAT LANDS NOT POSSIBLY BENEFITED WERE INCLUDED IN DRAINAGE DISTRICT.—On objection to a petition to confirm the issuance of bonds by a drainage district, evidence *held* to show that the objector's lands, which were included, although across a river from the main portion of the district, could not be benefited, and hence as to them the assessment was invalid.

8. EVIDENCE—JUDICIAL NOTICE TAKEN OF CHARACTER OF RIVER.—The court will take judicial notice of the size and volume of a river.

9. DRAINS—ASSESSMENT AGAINST LANDS IN NO WISE BENEFITED CANNOT BE UPHELD ON THEORY OF GENERAL BENEFIT.—An assessment for a drainage district against lands which lay across a river from the main body of lands and could receive no benefit cannot be upheld on the theory of general benefits to the territory.

10. DRAINS—FAILURE TO APPEAL FROM ORDER HELD NOT TO ESTOP OWNERS FROM OBJECTING TO ASSESSMENT.—Though the owners of lands which could not be benefited by a drainage system did not appeal within the ten-day period provided by Civil Code of 1913, paragraphs 5429, 5430, from the order of the board of supervisors, such failure does not, upon principles of estoppel, prevent the land owners from objecting to any assessment and raising that question on petition to confirm proceedings for the sale of bonds; for, as the inclusion and assessment were void, being an unlawful deprivation of property, it could not be validated by the land owner's inaction.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Judgment reversed.

Messrs. Armstrong, Lewis & Kramer, for Appellants.

Messrs. Gust & Smith, for Appellees.

BAKER, J.—The board of directors of drainage district No. 4, of the county of Maricopa, on the third day of March, 1920, filed in the superior court of that county, in pursuance of the provisions of chapter 5, title 55, Revised Statutes of Arizona of 1913, a petition for the confirmation by that court of their proceedings for the issuance of certain bonds of said district, amounting to $400,000. In their petition they alleged that:

"Said drainage district No. 4 is a duly organized and existing drainage district in the county of Maricopa, state of Arizona, under and pursuant to the provisions of chapter 5, title 55 (Civil Code), Revised Statutes of the state of Arizona 1913."

—and set forth the various steps taken by them in reference to the issuance of said bonds, and prayed that:

"This court may examine, hear and determine the sufficiency of all proceedings had precedent and incident to the issuance of said bonds, and may thereupon render judgment herein approving, confirming and declaring said bonds and all proceedings taken and had relative, or precedent, to the issuance thereof, to be in all respects regular, legal and valid."

Notice was thereupon given, by order of the court, that the hearing of said petition would be had April 26, 1920, and prior to that day the appellants herein filed a demurrer and answer to the petition. The demurrer was based upon the proposition that it affirmatively appears from the petition that the lands of said drainage district have been assessed to pay, and will be assessed and compelled to pay, the bonds when due, according to the value of the lands assessed, as provided in said chapter 5, title 55, Revised Statutes of Arizona of 1913, instead of according to the value of the benefits to be derived by the respective lands from the proposed drainage system and

XXII Ariz.—3

district and bond issue, thereby taking the property of the appellants, without due process of law, in violation of article 14, section 1, of Amendments to the Constitution of the United States, and of article 2, section 4, of the Constitution of the state of Arizona. In short, the constitutionality of the law is attacked by the demurrer.

The answer to the petition shows that appellants were the owners of lands within the district to be affected by said bonds. The answer furthermore contains affirmative allegations substantially to the effect that the lands of the appellants are situated west of the Hassayampa River and north of the Gila River, and that the said lands have natural drainage into the Gila River by reason of the character of the soil and subsoil and the situation and topography of the lands and the surrounding country west of the Hassayampa River and north of the Gila River, and that by reason of the geological and other natural conditions there prevailing and existing the said lands of appellants never have required, and do not now require, and never will, and cannot, require, directly or indirectly, any artificial system of drainage work, and that said lands have not been benefited, and would not be, and cannot, either now or in the future, be benefited, directly or indirectly, by the organization of said drainage district No. 4, or the construction of any artificial system of drainage work, or the issue and sale of the bonds described in the petition of the said board of directors; that the other lands embraced in said drainage district lie east of the said Hassayampa River, and are alkali and water-logged, and are of far less value per acre than the said lands of the appellants, and that the said lands of the appellants have been included within the exterior boundaries of said drainage district in order to require and compel the appellants, as owners of said lands, to pay for the benefit

produced by the drainage of other lands in the said drainage district, without any corresponding benefit, either directly or indirectly, to the said lands of appellants, and that the inclusion of the appellants' lands within said drainage district and the issue and sale of said bonds, if permitted and allowed, would deprive the appellants of their property, without due process of law, in violation of article 14, section 1, of Amendments to the Constitution of the United States, and in violation of article 2, section 4, of the Constitution of the state of Arizona. The demurrer was overruled.

The court, sitting without a jury, heard the case, and after the close of all the evidence. the court rendered its judgment:

"That all proceedings heretofore had precedent and incident to the issuance of the bonds of drainage district No. 4, in and for the county of Maricopa, state of Arizona, are sufficient and regular and legal and valid in all respects and the said bonds of said drainage district No. 4 are hereby approved and confirmed."

From this judgment an appeal has been taken, bringing here for review and consideration all the proceedings at the trial.

The principal assignments of error resolve themselves into an attack upon the constitutionality of chapter 5, title 55, of the Revised Statutes of Arizona of 1913, the law under which the board of directors of drainage district No. 4 acted, and under which law they filed their petition in the court below. The first point made by the appellants is that the law as written is unconstitutional, because that under said law the bonds in question will be a lien upon the property included within the district, and the principal and interest of the bonds will be paid out of assessments levied upon the respective tracts of land in the dis-

trict ''according to the value of the tract, and not according to the benefit to be derived by the lands from the construction of the works and issuance of the bonds.'' It is argued that such method of assessment ''so far transcends the limit of equality that its execution would cease to be a tax or a contribution to a common burden, and become extortion and confiscation'' and ''a flagrant taking of property without due process of law,'' in violation of the Fourteenth Amendment to the Constitution of the United States and of article 2, section 4, of the Constitution of the state of Arizona. This is said to be so because, the value of the appellants' lands being greatly in excess of the value of the other lands embraced in the district, the effect of the assessment will be to force the appellants to pay a far greater amount for the drainage of the other lands than the owners thereof will be required to pay for the improvements of their own lands, without any corresponding benefit to appellants' lands. A concrete example, illustrating the argument, is thus given in the brief of counsel for the appellants:

''A.'s land, of the value of $100 per acre, requires but one-tenth of the drainage that B.'s alkali, waterlogged land of a value of, say, $10 per acre. Under said chapter V, A. will carry ten times the actual out of pocket financial burden borne by B., and will derive only one-tenth the benefit received by B. A. must pay for the benefits accruing to B., and if A.'s land, like appellants', derives and could derive no benefit whatever from the works and bond issue, plainly the effect of the inclusion thereof within the district, with the resultant assessments thereof to pay both principal and interest of the bonds would be to force A. to pay for improvements to the lands of B. and others similarly situated, the imposition 'of a burden without a compensating advantage of any kind.' ''

But the argument advanced by the appellants is squarely met and effectually and completely answered

by the United States Supreme Court in the case of *Fallbrook Irrigation Dist.* v. *Bradley,* 164 U. S. 112, 41 L. Ed. 369, 17 Sup. Ct. Rep. 56 (see, also, Rose's U. S. Notes). That was a case involving the validity of the assessment of lands for local improvements (irrigation) based upon the value of the acreage and the court said:

"Although there is a marked distinction between an assessment for a local improvement and the levy of a general tax, yet the former is still the exercise of the same power as the latter, both having their source in the sovereign power of taxation. . . . Can an *ad valorem* assessment on the land benefited, or, in other words, can such an assessment as is provided for in sections 18, 20, 21, and 22 of the act be legally levied in such a case as this? Assume that the only theory of these assessments for local improvements upon which they can stand is that they are imposed on account of the benefits received, and that no land ought in justice to be assessed for a greater sum than the benefits received by it, yet it is plain that the fact of the amount of benefits is not susceptible of that accurate determination which appertains to a demonstration in geometry. Some means of arriving at this amount must be used, and the same method may be more or less accurate in different cases involving different facts. Some choice is to be made, and where the fact of some benefit accruing to all the lands has been legally found, can it be that the adoption of an *ad valorem* method of assessing the lands is to be held a violation of the federal Constitution? It seems to us clearly not. It is one of those matters of detail in arriving at the proper and fair amount and proportion of the tax that is to be levied on the land with regard to the benefits it has received, which is open to the discretion of the state legislature, and with which this court ought to have nothing to do. The way of arriving at the amount may be in some instances inequitable and unequal, but that is far from rising to the level of a constitutional problem, and far from a case of taking property without due process of law."

The court furthermore said:

"The method of assessment here provided for may not be the best which could have been adopted in order to accomplish the most equal and exact justice which the nature of the case permits. But none the less we are unable to say that it runs counter to any provision of the federal Constitution, and we must for that reason hold the objection here considered to be untenable." *In re Bonds of Madera Irrigation Dist.*, 92 Cal. 296, 27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272.

Our conclusion is that the act (chapter 5, tit. 55, Rev. Stats. Ariz. 1913) is not violative of the Fourteenth Amendment of the Constitution of the United States in respect to the method adopted for the assessment of the lands in the district to pay the principal and interest of the bonds, and for the same reasons it is not violative of section 4, article 2, of the Constitution of the state of Arizona.

The second point made by the appellants is that the inclusion of the appellants' land within the exterior boundaries of the drainage district was palpably an arbitrary proceeding, and a plain abuse of the power conferred by the act upon the board of directors of the drainage district, because the appellants' lands could not be benefited and will not be benefited in the future, either directly or indirectly, by the construction of the proposed system of drainage, and that such action was therefore obnoxious to the federal and state constitutional provisions cited. This contention is not an attack upon the law as written, but is an attack upon the law as applied, administered, and justified by the court below. It is apparent that the determination of the question depends upon the state of the evidence as adduced at the trial. Before proceeding, however, to any consideration of the evidence, it is well to call attention to the prin-

ciples of law involved, in the light of which the evidence should be reviewed and considered. Plainly the underlying purpose of the statute is to permit organization by form of governmental corporation for the drainage of agricultural lands in order that they may be made productive. It is a fact, of which this court will take judicial notice, that a considerable acreage of the lands situated in the Salt River Valley have become alkali and water-logged and unproductive; hence the necessity of drainage of these lands in order to restore them to their former state of productiveness. The wisdom of the statute providing for organized effort to accomplish such result cannot reasonably be questioned. The theory of law which underlies the assessment of property for a public improvement in the way of drainage of lands is that the property is benefited by the improvement, and should bear a proportion of the cost thereof corresponding to this benefit. This is but natural justice. On the other hand, there can be but little doubt that an assessment upon property which is not benefited is void. *Myles Salt Co.* v. *Board of Commrs.*, 239 U. S. 478, L. R. A. 1918E, 190, 60 L. Ed. 392, 36 Sup. Ct. Rep. 204 (see, also, Rose's U. S. Notes); *Horton Investment Co. et al.* v. *City of Seattle*, 94 Wash. 556, L. R. A. 1918E, 194, 162 Pac. 989. That our drainage law is based upon these principles is apparent from the terms of the act itself:

"When such petition is presented the board of supervisors shall hear the same, and may adjourn such hearing from time to time not exceeding four weeks in all, and on the final hearing, such board shall make such changes in the proposed boundaries as may be deemed advisable, and shall define and establish such boundaries. But such board shall not modify such boundaries so as to exclude from the proposed district any territory which is susceptible of drainage by the same system of works applicable to

the other lands in such proposed district; nor shall any lands which will not, in the judgment of said board, be benefited by drainage, by means of said system of works, be included within such proposed district." Paragraph 5429, c. 5, tit. 55, Rev. Stats. Ariz. 1913.

Professor Farnham, in his work on Waters and Water Rights, volume 2, section 172, treats the question in a very philosophical sense. As is pointed out by that learned author, this question is one—

"Which reaches to the very foundations of any theory of democratic government. In governments founded on force the question can never become a practical one. But where all men are free and equal, and have established a government under which all have equal rights, by what authority can one man, or any number of men, say to another: 'We consider the drainage of a section of land necessary, and you must effect it or share the expense of doing so'? The only possible ground for such authority must be his consent, either express or implied. If the consent has not been expressly granted in the Constitution of the state, the questions then are: Is it necessarily included in his agreement to the formation of the government? or, has he delegated authority to his representatives in the government to express his consent? The hypotheses involved in these questions are so nearly identical that they may, for practical purposes, be regarded as the same. Does, then, the consent to the formation of the government include consent to bear or share the expense of drainage for the public good? There are certain things which all agree that one consents to, such as to share in the expense of the government and the maintenance of highways, and to aid in the common defense against the public enemy and in the maintenance of order and punishment of crime. But he has expressly provided, in most instances, that his property shall not be taken from him for the private benefit of another, or even for the benefit of the public, unless he is compensated therefor. And the whole theory of the government is based upon the principle that burdens must be ap-

proximately equal and uniform. But the government is organized to obtain certain benefits which cannot come from individual effort. . . . Applying these principles to the solution of the problem whether or not the individual agrees to aid in the drainage of the land, the answer would seem to be that necessary drainage is one of the things in the expense of which an individual consents to the formation of the government; that his share of the expense is to be determined, not by the benefit to himself, but by ascertaining his share of the total cost when divided among all the property benefited in proportion to benefits; that he cannot be charged with any burden for the benefit of others who do not bear their share of it; and that in no case can he be required to drain for the benefit of other individuals. . . . One man cannot be compelled to drain his land for the benefit of his neighbor, except where the lack of drainage constitutes a nuisance which may be abated under the general principles governing the abatement of nuisances."

From the foregoing authorities we deduce the legal proposition (the soundness of which we cannot doubt) that the legislature may create taxing districts for the purpose of local improvements, such as drainage, and also may delegate that authority to boards or commissioners. When this is done the question of benefit to the land taxed is one of fact to be finally determined by the taxing authorities, but subject, however, to the exception that the delegated body may not act arbitrarily and impose a tax in utter disregard to the benefit to be derived by the property taxed. *Houck* v. *Little River Drainage Dist.*, 239 U. S. 254, 60 L. Ed. 266, 36 Sup. Ct. Rep. 58; *Louisville & N. R. R. Co.* v. *Barber Asphalt Paving Co.*, 197 U. S. 430, 49 L. Ed. 819, 25 Sup. Ct. Rep. 466; *Spencer* v. *Merchant*, 125 U. S. 345, 31 L. Ed. 763, 8 Sup. Ct. Rep. 921; *Davidson* v. *New Orleans*, 96 U. S. 97, 24 L. Ed. 616 (see, also, Rose's U. S. Notes);

*Myles Salt Co.* v. *Board of Commrs., supra.* In the case last cited, the United States Supreme Court said:

"There is no doubt that the legislature of a state may constitute drainage districts and define their boundaries, or may delegate such authority to local administrative bodies, as, in the present case, to the police juries of the parishes of the state, and that their action cannot be assailed under the Fourteenth Amendment, unless it is palpably arbitrary and a plain abuse. *Houck* v. *Little River Drainage Dist.,* 239 U. S. 254 [60 L. Ed. 266, 36 Sup. Ct. Rep. 58]. . . . The charge is that plaintiff's property was included in the district, not in the exercise of 'legal legislative discretion,' not that the scheme of drainage would inure to the benefit of the property, even indirectly, but with the predetermined 'purpose of deriving revenues to the end of granting a special benefit to the other lands subject to be improved by drainage, without any benefit' to plaintiff 'or its property whatever,' present or prospective. . . . It is to be remembered that a drainage district has the special purpose of the improvement of particular property, and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation. *Wagner* v. *(Leser) Baltimore,* 239 U. S. 207 [60 L. Ed. 230, 36 Sup. Ct. Rep. 66]. We are not dealing with motives alone, but as well with their resultant action; we are not dealing with disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by considerations not of the improvement of plaintiff's property, but solely of the improvement of the property of others—power, therefore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind."

Reverting to the trial and the evidence adduced thereat, we find upon an examination of the record that the trial judge made no findings of fact. This

leaves a cloud in respect to the basis of his judgment.
We are led to believe, however, from the face of the
record that the trial judge based his judgment, not
upon the question whether or not the appellants'
lands were benefited, but upon the provisions of para-
graphs 5429, 5430, of the act, which provide for a
hearing on the petition for the formation of the dis-
trict, and whether or not such petition complies with
the requirements of the statute, including the ques-
tion whether or not the lands of the appellants would
be benefited by the formation of the district, and giv-
ing the right to appeal to the superior court by any
party interested from any order made in the proceed-
ings within ten days, and that, the appellants having
failed to avail themselves of these provisions, they
were barred by the determination of the board of su-
pervisors, including their lands in the drainage dis-
trict. If such was the basis of the judgment of the
lower court, manifestly we are left free to view the
evidence for ourselves in respect to the question of
benefit to appellants' lands.

Assuming, however, that the trial court found that
the proofs established a benefit to the lands of the
appellants, is the finding warranted by the evidence?
The finding of a trial judge is entitled to high con-
sideration; and, unless it is entirely without any rea-
sonable evidence to support it, such finding will not
be disturbed on appeal. But a careful perusal of the
evidence convinces us that no advantage or benefit
will accrue to the lands of the appellants by or
through the proposed drainage system. Drainage
district No. 4 is comprised of land around the town
of Buckeye, in Maricopa county, and consists of ap-
proximately 20,000 acres, including appellants' lands,
which consist of 1,080 acres. The appellants' lands
lie in one compact body west of the Hassayampa
River and north of the Gila River. The remaining

lands in the district lie east of the Hassayampa River and north of the Gila River, and are to a considerable extent alkali and water-logged. It will thus be seen that the lands of the appellants are separated from the other lands by a stream or river (Hassayampa), which flows in a southwesterly direction and empties into the Gila, which in turn flows also in a southwesterly direction. The drain of the appellants' lands is into the Gila River, downstream and away from the other lands in the district. W. S. Stevens, one of the defendants, testified that the lands of the appellants had a very marked fall to the south into the Gila River; that the lands possessed natural drainage, and that they did not require artificial drainage; that the water plans on these lands was from thirty to forty feet below the surface of the lands, and that the lands were not water-logged or alkali, and that the soil was a sandy loam. He furthermore testified that the plan of the drainage system proposed in the formation of the district does not contemplate the drainage of the appellants' lands, and that these lands would not and could not be benefited by the proposed drainage system. On cross-examination he said:

"I went to the Buckeye engineer, shortly after I knew about this, in fact, a few days, and I asked him how it was that my place was included in that [drainage system], and he said, 'Well, evidently it was an oversight.' That was Mr. Hancock. That he didn't think I could ever receive any permanent benefit from that drainage."

This was all the evidence that was introduced on the subject of benefit to the appellants' lands. The evidence of the witness Stevens was not contradicted in any particular. True, the witness was not a civil engineer, but it appears that he was a man of practical experience in drainage matters, and was familiar

with the lands, their situation, characteristics, the topography of the country, etc. The undisputed proofs, instead of showing that the lands of the appellants would, or could, receive any benefit from the proposed drainage system, conclusively established that these lands would receive no benefit whatever from the system. That the lands of the appellants, if benefited, might be assessed for the cost of the drainage of the other lands in the district is conceded, but if there is no advantage or benefit resulting to the appellants' lands from the proposed drainage system, it would clearly amount to confiscation to tax their lands for such improvement. It has been well said that the power to tax is the power to destroy. *McCulloch* v. *Maryland,* 4 Wheat. 431, 4 L. Ed. 579; *Loan Assn.* v. *Topeka,* 20 Wall. 655, 663, 22 L. Ed. 455 (see, also, Rose's U. S. Notes).

We are cited to several decisions in support of the proposition that the general benefits accruing to lands from the construction of drainage works is sufficient to include the lands in the drainage district. *Los Angeles County Flood Control Dist.* v. *Hamilton,* 177 Cal. 119, 169 Pac. 1028; *In re Bonds of Madera Irrigation Dist., supra; In re Drainage Dist. No. 3* v. *Hardin County,* 146 Iowa, 564, 123 N. W. 1064. We do not doubt the soundness of the proposition stated, but we do not believe that it has any application to the facts of the present case, and every case must be decided on its own facts. It must be borne in mind that appellants' lands lie separated by Hassayampa River from the rest of the lands in the district—a river of considerable width and volume, at least at flood time, of which fact the court will take judicial notice. They lie west of the rest of the district in a compact body, isolated as it were. They drain into the Gila River downstream away from the other lands in the district, and therefore cannot contribute

to the water-logged condition of the other lands. It seems to us that the drainage of the other lands will not necessarily add anything of substantial value to the appellants' lands. Be this as it may, the question of benefits to appellants' lands was one of fact, and, as already pointed out, the undisputed evidence shows that these lands will not receive any advantage or benefit whatever from the construction of the proposed drainage works. In *Los Angeles County Flood Control Dist.* v. *Hamilton, supra,* in discussing the general rule that a legislative determination that the lands within the district boundaries are all benefited by the improvement of neighboring lands is conclusive, an exception to the general rule is recognized:

"But since the imposition of such costs finds its ground of sanction in the benefits conferred upon the lands charged, it may well be that the legislative conclusion should not be upheld, where the court can see that it is contrary to any rational view of the facts, and that lands have been included that 'plainly could not by any fair or proper view of the facts be benefited.' "

It is argued, in behalf of the board of directors of the drainage district, that the appellants, having failed to avail themselves of the provisions of paragraphs 5429, 5430, of the act, allowing them to contest the inclusion of their lands in the proposed drainage system and take an appeal to the superior court, within ten days from any order of the board of supervisors so including their lands, they are now estopped and barred from contesting the legality of the formation of the drainage district. We cannot concur in this contention. It cannot be supposed that the act, while providing for a hearing of the petition for the formation of the district, before the board of supervisors, yet at the same time commands the establishment and defining of the boundaries of the

district in utter disregard to any benefit to the lands
of the appellants. Such an absurdity cannot be im-
puted to the legislature. In fact, the act in express
terms precludes such a possibility, ''nor shall any
lands which will not, in the judgment of said board,
be benefited by drainage, by means of said system of
works, be included within such proposed district.''
Paragraph 5429. A failure to attack the validity of
the formation of the district at the hearing provided
for by the act cannot be held to give validity to the
proceedings, if in truth and fact such proceedings be
violative of the constitutional provisions. If the con-
trary were held, the result would be the same as if
the constitutional provisions did not exist at all. No
act of the legislature, prescribing a short period of
limitation, can take away from the property owner,
whose property is affected, the right to have the bur-
dens cast upon him, measured by the limits of the
Constitution. If the inclusion of the appellants'
lands within the exterior boundaries of the drainage
district was a void proceeding, as violative of the
constitutional provisions, such error was not cured
by the mere inaction of the appellants. *Wight* v.
*Police Jury* (C. C. A.), 264 Fed. 705; *Daigle* v.
*Opelousas G. & E. Ry. Co.*, 124 La. 1047, 50 South.
846. It cannot therefore be said that the appellants
did not act promptly.

From the uncontradicted facts of the case, we are
constrained to hold that the authorities acted arbi-
trarily and without due regard to the appellants'
rights when they included appellants' lands in the
drainage district; that appellants' lands will derive
no benefit whatever from the proposed drainage sys-
tem, and these lands should not have been included.
We must not be understood as holding that the au-
thorities acted from improper motives. There is no
suggestion in the record of such improper motives.

As was said in *Myles* v. *Board of Commrs., supra:* "We are not dealing with motives alone, but as well with their resultant action."

For the reasons assigned, the judgment must be reversed.

CUNNINGHAM, C. J., and ROSS, J., concur.