[Civil No. 2602. Filed July 11, 1927.]

[257 Pac. 990.]

ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. GRAHAM COUNTY THATCHER DRAINAGE DISTRICT No. 1 and CENTRAL DRAINAGE DISTRICT No. 2, Appellees.

Mr. Charles L. Rawlins and Mr. Del W. Harrington, for Appellant.

Mr. Jesse A. Udall, County Attorney, for Appellees.

LOCKWOOD, J.—The Thatcher drainage district No. 1 and the Central drainage district No. 2, situated in Graham county, were organized, respectively, in 1918 and 1920, under chapter 5, title, 55, Revised Statutes of Arizona 1913, Civil Code. The Arizona Eastern Railroad Company, hereinafter called appellant, owned certain real estate located in each of said districts at the time of their organization, but did not appear before the board of supervisors at the meeting when their boundaries were fixed and object to the inclusion of its property, nor did it, when suits were brought as provided by law to validate the bonds of the district, appear and contest the actions, and from the organization of the districts until October, 1925, it paid all special district taxes levied upon said property. On the last-named date, however, it paid the taxes then due under protest and later filed this suit to recover them. The matter was heard before the court sitting without a jury, and findings of fact and conclusions of law were duly filed, upon which a judgment in favor of Graham county and the two districts was rendered. After a motion for new trial was overruled, an appeal was taken to this court.

There are five assignments of error which we will consider in accordance with the legal propositions raised. The first question is whether or not appellant is estopped from contending in this suit its lands were improperly included within the drainage districts. Briefly summarized, its position in this point may be stated syllogistically as follows: Chapter 5, title 55, *supra,* in regard to drainage districts, provides that only agricultural lands may be included therein; the real estate in question in this case is the right of way of appellant, used exclusively for railroad purposes, and is therefore not "agricultural land," within the meaning of the statute; such being the case, the board of supervisors was without juris-

diction to include such right of way within the boundaries of the district, and its order so doing was void *ab initio* and may be attacked at any time.

The particular portions of chapter 5, *supra*, which are necessary for our consideration, read as follows:

"5427. Whenever five or more of the holders of title . . . to agricultural lands which are susceptible of drainage by the same general system of works, desire to provide for the drainage of such lands, they may propose the organization of a drainage district under the provisions of this chapter. . . .

"5428. In order to propose the organization of a drainage district, a petition shall be presented to the board of supervisors of the county in which the lands within the proposed district . . . are situated, signed by the required number of holders of title . . . to the lands within such proposed district, which petition shall set forth and particularly describe the proposed boundaries of such district and shall pray that the same be organized as a drainage district under the provisions of this chapter. . . .

"5429. When such petition is presented the board of supervisors shall hear the same . . . and on the final hearing, such board shall make such changes in the proposed boundaries as may be deemed advisable, and shall define and establish such boundaries. But such board shall not modify such boundaries so as to exclude from the proposed district any territory which is susceptible of drainage by the same system of works applicable to the other lands in such proposed district; nor shall any lands which will not, in the judgment of said board, be benefited by drainage, by means of said system of works, be included within such proposed district. . . .

"5430. The right of appeal from said order to the superior court of the county, wherein such petition is heard, is hereby given to any person interested and who shall be a party to the record. . . . Upon the appeal the superior court shall make and enter its judgment affirming, modifying or reversing the order appealed from. . . .

"5484. The board of directors shall, within thirty days after the issue of any bonds herein provided

for, bring an action in the superior court of the county wherein is located the office of such board, to determine the validity of any such bonds. Such action shall be in the nature of a proceeding *in rem.* . . . Any one interested may, at any time before the expiration of said thirty days, appear and by proper proceeding, contest the validity of such bonds. . . . Either party shall have the right to appeal. . . .

"5488. The court hearing any of the contests herein provided for . . . must disregard any error, irregularity, or omission which does not affect the substantial rights of the parties to such action or proceeding. . . .

"5489. No contest of any matter or thing herein provided for shall be made other than within the time and manner herein specified."

A very similar question has been before this court in the case of *In re Bonds of Drainage Dist. No. 4*, 22 Ariz. 31, 193 Pac. 833. This court in its original opinion held that parties who had not taken advantage of the statutory provision allowing them to protest against the action of the supervisors in determining the boundaries of the district were not estopped thereby from setting up in another proceeding that their lands were not benefited by the proposed works, and that the order of the supervisors including such lands within its bounds was void. A petition for rehearing was filed, and this court reconsidered its former opinion and granted the petition. 22 Ariz. 49, 205 Pac. 806. In that case the landholders had not protested the organization of the district nor the inclusion of their lands within its boundaries, under paragraphs 5427-5430, but when confirmatory proceedings were filed, under paragraph 5484, they did appear and raised the point above stated, to wit, that since their lands were not benefited the supervisors were without jurisdiction to include them in the district. In the opinion on rehearing we stated:

"Of course, it is necessary that the landowner have an opportunity at some stage of the proceedings to

contest the question of benefits. In other words, he is entitled to his day in court."

And, further, quoting:

"From a careful consideration of the whole drainage act, we are compelled to come to the conclusion that the question of benefits to lands included in drainage district No. 4 could not be litigated in the proceeding to contest the validity of the bonds of such district; *that a land holder dissatisfied with the inclusion of his lands in such district must make his objections before the board of supervisors upon the hearing of petition to organize the district or upon appeal to the superior court as provided in the statute.*" (Italics ours.)

Appellant, however, contends that the case just cited is not in point. While admitting, as it must, that it is conclusive as to whether or not its lands are benefited by the proposed drainage district, it insists that, since, as it claims, chapter 5, *supra,* applies only to agricultural lands, the board of supervisors had no jurisdiction to consider any other real estate for inclusion in the district, and that such matter being jurisdictional, the action of the board may be attacked collaterally. We think, however, that the two cases on this point are exactly parallel. As was stated in the case above cited:

"The theory of law which underlies the assessment of property for a public improvement in the way of drainage of lands is that the property is benefited by the improvement, and should bear a proportion of the cost thereof corresponding to this benefit. This is but natural justice. On the other hand, there can be but little doubt that an assessment upon property which is not benefited is void" (citing cases).

The character of the lands in the district is no more jurisdictional than the necessity that they be benefited by the drainage. In each case, however, the jurisdiction depends upon a question of fact. Under the statute an opportunity is given to the land owner

to raise and have determined both issues. If he fails to do so when the fact involved is the question of benefits, it is conclusively presumed that his land is benefited, and we can see no reason why the same presumption does not apply when the question is whether his lands are agricultural or not. We therefore hold that on the face of the record appellant is estopped from raising the question of whether or not its lands were properly included in either of the districts, on the ground that they were not agricultural in their character.

But even were it permitted to litigate in this case the issue which, as we have just stated, was conclusively settled when appellant failed to take advantage of its rights under the statute, we do not think it would be in any better condition. It is, of course, true that, as stated by us in the above case:

"Plainly the underlying purpose of the statute is to permit organization by form of governmental corporation for the drainage of agricultural lands in order that they may be made productive."

It does not necessarily follow from this, however, that only lands which are strictly agricultural in the sense that they are at the time, or presumably will be in the immediate future, used for actual farming purposes are the only lands which may be included therein. As will be noticed, the only limitations specifically set forth by the statute on the lands to be included within the district are as follows:

"But such board shall not modify such boundaries so as to exclude from the proposed district any territory which is susceptible of drainage by the same system of works applicable to the other lands in such proposed district; nor shall any land which will not, in the judgment of said board, be benefited by drainage, by means of said system of works, be included within such proposed district." Civ. Code 1913, par. 5429.

It will be seen that the ultimate test is not, "Are the lands solely agricultural in character?" but, rather, "Will they be drained and benefited by the proposed works?" While the large majority of the lands benefited by a drainage district of this nature will necessarily be strictly agricultural in character, this is not always so. As was stated in *Commissioner of Highways* v. *Commissioner of Drain. Dist.,* 127 Ill. 581, 21 N. E. 206:

"Moreover, we are of the opinion that neither the Constitution nor the statute requires that the benefits shall be for agricultural or sanitary purposes. They require that the districts shall be organized for those purposes, but the only limitation in respect to *benefits* is, that the drains, etc., shall be constructed and maintained by a 'special assessment upon the property benefited thereby,' that is, benefited by constructing or maintaining the drain, etc. If a highway over marshy or swampy grounds shall be drained, it will be improved, and the public will be benefited thereby. That will be done by the drainage district which it was the duty of the highway district to do, and therefore it imposes no burden upon the highway district that it shall be required to contribute, in proportion to the benefit thus received, for the improvement whereby it is produced, but, on the contrary, it ratably distributes the cost of a public improvement in accordance with the spirit of our Constitution."

The record shows that appellant's right of way was benefited by the drainage district as much as, if not more than, a similar area of strictly farming land in the same district. It is but rarely that a drainage district is established which contains within its exterior boundaries only real estate used solely for farming purposes. Frequently there will be within it a little settlement, a crossroads store perhaps, or suburban residences whose value will be greatly enhanced by the proposed drainage work. Is it just or reasonable, or can we consider that the

legislature contemplated that this real estate shall not bear its share of the burdens when it is benefited by the work? We think such a construction should not be placed on the act unless the legislature has clearly so stated, and in this case it has not done so. The fundamental principle is that assessments should be based on benefits. A hearing is provided for, where every owner of real estate of whatever character within the district may appear and show that his lands will not be benefited, and if the board be satisfied such is the case, the statute provides that those lands *must* be excluded. If the land owner is not content with the decision of the board, he may appeal to the courts for redress. If he fails to take advantage of the right so granted him, we think there is nothing unjust, illegal, or unconstitutional in holding that it is conclusively presumed his land was properly included.

The last assignment of error is that no personal judgment can be had against appellant if it should refuse to pay the taxes assessed against it; that the railroad right of way cannot be sold to satisfy an assessment of taxes, because it is against public policy to permit such rights of way to be sold piecemeal; and that, since no provision is made by law whereby appellant can be compelled to pay these taxes, it must be presumed it was not intended that it should be taxed. We do not consider this point in the case at bar, for appellant has already paid such taxes. Should it refuse to do so in the future, we do not doubt that the legislative authorities of the state will provide a means, if none exists at the present time, whereby a tax which is legally and justly due can be collected. The judgment of the superior court of Graham county is affirmed.

ROSS, C. J., and McALISTER, J., concur.