[Civil No. 2856.  Filed March 10, 1930.]

[285 Pac. 998.]

SOUTHERN PACIFIC COMPANY, a Corporation, Appellant, v. THE COUNTY OF GRAHAM OF THE STATE OF ARIZONA, THATCHER DRAINAGE DISTRICT No. 1, and CENTRAL DRAINAGE DISTRICT No. 2, Appellees..

360

Mr. Charles L. Rawlins and Mr. Del W. Harrington, for Appellant.

Mr. Jesse A. Udall and Mr. Charles Rogers, for Appellees.

ROSS, J.—For the year 1927, the Southern Pacific Company's property, both tangible and intangible, real and personal, was listed by the taxing authority of the state and/or county of Graham as subject to taxation in Thatcher Drainage District No. 1 and Central Drainage District No. 2 for drainage purposes. The company paid to the treasurer of Graham county, who is made by law *ex-officio* treasurer of such districts, the first installment of $921.25 under protest, and thereafter instituted this action to recover such sum contending (1) that there is no

authority under the laws of the state to assess and levy taxes against railroad property for drainage district purposes, and (2) that if there is such authority, it is vested in the State Tax Commission and not the board of supervisors, and, since it is not pretended that such authority was exercised by the State Tax Commission but by the board of supervisors, the assessment is void.

The fact is, and the answer so admits, that the board of supervisors of Graham county assessed plaintiff's property, both real and personal, in said drainage districts for drainage purposes by adopting the valuation and assessment placed thereon by the State Tax Commission in the year 1927, and levied a tax on said property, and on the rest of the property in said districts, at a rate sufficient to raise the amount certified to them by the boards of directors of the drainage districts. The defendants' answer confessed that it was error to include in such assessment plaintiff's personal property, since a drainage tax is only against realty, and asked the court to correct the assessment by deducting from the total assessment the value of the personal property. A trial was had and judgment was entered in favor of the plaintiff for the taxes it had paid on its personal property and against it for the taxes on its real property located in said drainage districts.

The plaintiff has appealed from such judgment. It is claimed that the answer failed to state facts sufficient to constitute a defense to the complaint. There are other assignments but all directed to the proposition of the legality of the assessment of plaintiff's property. We think the whole question depends upon the sufficiency of the answer and we shall accordingly confine ourselves to the order overruling plaintiff's demurrer.

The property of this state is classified for the purposes of appraisement and assessment. The duty

and power to appraise and assess all railroad property, all telegraph and telephone property, all express company property, excepting personal and real property not used in the operation of such utilities, all sleeping-car companies, private car lines and all patented and unpatented producing mines is conferred on the State Tax Commission. Subdivision 13, par. 4829, Civ. Code 1913. The time and method of assessing railroad property are prescribed by chapter 10, title 49, of such code. By the provisions of this chapter the railroad company is required to make a schedule of its property showing what proportion thereof, and its value, is within the limits of each county, when it extends through more counties than one, and each incorporated city or town through which it passes, and to send such schedule to the State Tax Commission. Paragraph 4967 thereof makes it the duty of the State Tax Commission to assess such property at its full cash value and provides that the "assessment shall be made upon the entire railroad, within this state, and shall include the franchise, intangible values, right of way, roadbed, bridges, culverts, rolling stock, depots, station grounds, buildings, telegraph lines and all other property, real and personal, exclusively used in the operation of such railroad."

Under paragraph 4968 it is provided that, if the railroad extends through more counties than one, the State Tax Commission shall, by the methods therein prescribed, ascertain what proportion on a *pro rata* basis should be assigned to each of such counties and the municipalities thereof and that "all such property . . . shall be taxable upon said assessment by the same officers and for the same purposes as the property of individuals within such counties."

By paragraph 4969, it is made the duty of the State Tax Commission at its June meeting to make "a separate appraisement and assessment of all the

taxable property of railroad companies and corporations situated within the corporate limits of each incorporated city and town, except such real and personal property as is not used in the continuous operation of such railroads, and shall fix the value of such property, and on or before the second Monday in July in each year said commission shall transmit to the proper authorities of each incorporated city or town a statement showing in detail the property within the corporate limits of such city or town, and the valuation thereof. The proper authorities of such city or town shall assess such property for city or town purposes at the valuation fixed by the tax commission, and shall cause all such property to be entered upon the city or town assessment roll under the proper heads therefor, with the total value of such assessed property carried out as transmitted by the State Tax Commission and all such property shall be taxable upon said assessment by the same officers and for the same purposes as the property of individuals within such incorporated cities or towns. The assessment and valuation herein provided for city and town purposes, shall be in addition to the assessment and valuation for state and county purposes.''

It is obvious from the statutes quoted that the exclusive power and duty of appraising and assessing railroad property, except that not used in its operation, is vested in the State Tax Commission and that the intention of the legislature was that such appraisement and assessment was for the four following purposes, to wit, state, county, city and town. These taxing units are recognized. No other taxing units through which the railroad extends are mentioned. The right and power of the legislature to confer the duty upon the Tax Commission of appraising and assessing railroad property, and to require taxing units through which it extends to

adopt such assessment and appraisement for taxing purposes is quite common and well settled. *Kentucky Railroad Tax Cases,* 115 U. S. 321, 29 L. Ed. 414, 6 Sup. Ct. Rep. 57; *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194, 41 L. Ed. 683, 17 Sup. Ct. 305.

But because the legislature, either purposely or by oversight, in the legislation conferring sole power upon the Tax Commission to assess and appraise railroad property may have limited such assessment and appraisement to state, county, city and town purposes will not preclude the legislature from adopting such assessment and appraisement to the taxing purposes of other tax units through which the railroad may extend. If the legislature by some other law or statute has provided that the Tax Commission's assessment and appraisement of railroads shall be used by other tax units through which the railroad extends, we know of no reason why it may not do so. It appears to us that the legislature has done that very thing in the drainage district law. Chapter 5, tit. 55, Civ. Code 1913, as amended. Paragraph 5468 of such chapter, as amended by chapter 10, Special Session Laws of 1922, so far as material, reads as follows:

"The board of supervisors of each county wherein is situated a district, or any part thereof, organized under the provisions of this chapter must, annually, at the time of levying county taxes, levy a tax to be known as the '(Name of District) Drainage District Tax' sufficient to raise an amount reported to them as herein provided, by the board of directors. . . . The supervisors must determine the rate of such tax by deducting fifteen per centum for anticipated delinquencies from the total assessed value of the real property included within the district, within the county as the same appears on the assessment rolls of the county, and then dividing the sum necessary to

be raised under this paragraph, by the remainder of such total assessed value."

All the property in the drainage districts was assessed and appraised for 1927, the railroad property by the State Tax Commission under chapter 10, title 49, *supra,* and the rest of the property by the county assessor under paragraph 4860 of the Civil Code of 1913. Such assessments, that of the plaintiff railroad company and that of all others located in such drainage districts, "appear on the assessment rolls of the county" of Graham. Upon such valuation, less fifteen per centum for delinquencies, the board of supervisors must, the drainage statute says, at the time of levying county taxes, levy a tax sufficient to raise an amount reported to them by the boards of directors of the drainage districts in the county. Not only the language of the statute permits and directs the supervisors to adopt the Tax Commission's assessment and appraisement for drainage purposes, but the uniform rule of taxation dictates it. Since other property in such districts must bear the burden, reason and justice require that the railroad property also pay a drainage tax. We have therefore held that the plaintiff's property was subject to such taxes. *Arizona Eastern R. Co.* v. *Graham County,* 32 Ariz. 322, 257 Pac. 990.

The assessment of plaintiff's property in the drainage districts was the act of the State Tax Commission and the fixing of the rate and the levying of the tax was the act of the board of supervisors. It is contended by the plaintiff that because the former did not make and certify to the board of supervisors a separate appraisement and assessment of plaintiff's real property within such drainage districts, the supervisors were powerless to make a levy upon plaintiff's real estate within said districts, even though the value thereof as fixed by the Tax Commis-

sion otherwise appeared on the assessment-rolls of Graham county. It is the contention of defendants, as it appears from their answer, that the State Tax Commission assessed and appraised plaintiff's real estate in the incorporated towns of Thatcher and Pima for tax purposes for the year 1927, at $23,000 per mile main track, $5,000 per mile for side-track, and land in right of way at $125 per acre; that because a portion of the town of Thatcher is within the Thatcher Drainage District and the town of Pima is within the vicinity of the Central Drainage District, the board of supervisors was justified and authorized to adopt the assessment and appraisement by the Tax Commission of plaintiff's realty in the towns as the assessment and appraisement of like property in the drainage districts. If the boundaries of the incorporated towns and the drainage districts coincided, the contention of defendants, we think, might be sustained, but since they do not appear to be the same the assessment and appraisement of the real estate in the drainage districts was the act of the supervisors and, as we have seen, the law does not empower the supervisors to make assessments and appraisements of the real property of a railroad.

It is said: "The foundation of all property taxes is the assessment (Cooley on Taxation [3d Ed.] 597), and the assessment must be made by the proper officer or it will be void (Id. 600)." *State* v. *State Board of Equalization,* 67 Mont. 340, 215 Pac. 667, 670.

The lower court should have sustained the plaintiff's demurrer to defendant's answer.

The order is that the case be remanded, with directions that the demurrer be sustained, and that further proceedings be taken in accordance herewith.

LOCKWOOD, C. J., and McALISTER, J., concur.