## DECEMBER TERM, 1886.

### The People ex rel. Seeley v. May, Treasurer.

1. The limitation imposed upon county indebtedness by section 6, article XI, of the constitution, includes debts incurred by operation of law as well as those arising from express contracts.

2. This constitutional provision deals with indebtedness that springs from express or implied contracts, and not with involuntary liability arising *ex delicto.*

3. The constitutional inhibition applies only to indebtedness; that instrument does not limit county authorities in the levy of taxes for county purposes.

4. Though a municipal corporation be indebted to the constitutional limit, valid appropriations of its revenue may be made in anticipation of the collection thereof to meet the ordinary expenses of the current fiscal year.

5. But such appropriations can only be made by orders upon the incoming revenue, given and accepted as payment; the effect of the transaction must be that of an assignment without recourse.

6. Under the funding statute the county authorities may provide for warrants previously presented to the treasurer for payment and duly registered, constituting valid debts, and thus be enabled to use all of the current general revenue in discharging the current expenses.

*Mandamus to Treasurer of Lake County.*

This case is now considered by the court on the pleadings for the third time. It was first presented upon a demurrer to the original petition (*People v. May*, 8 Colo. 485); it was again submitted upon a demurrer to the answer (*People v. May, ante*, p. 80), while the present discussion takes place upon a demurrer to the replication. At each of these stages of pleading different questions have been submitted, examined and adjudicated.

Aside from the omission of section 6, article 11, of the state constitution in full, the present opinion sufficiently recites the facts. This section gives rise to the questions now determined. It reads as follows: "No county shall contract any debt by loan in any form, except for the purpose of erecting necessary public buildings, making or repairing public roads and bridges; and such indebtedness, contracted in any one year, shall not exceed the rates upon the taxable property in such county, following, to wit: Counties in which the assessed valuation of taxable property shall exceed five millions of dollars, one dollar and fifty cents on each thousand dollars thereof; counties in which such valuation shall be less than five millions of dollars, three dollars on each thousand dollars thereof. And the aggregate amount of indebtedness of any county for all purposes, exclusive of debts contracted before the adoption of this constitution, shall not at any time exceed twice the amount above herein limited, unless when in manner provided by law the question of incurring such debt shall, at a general election, be submitted to such of the qualified electors of such county as in the year last preceding such election shall have paid a tax upon property assessed to them in such county, and a majority of those voting thereon shall vote in favor of incurring the debt; but the bonds, if any be issued therefor, shall not run less than ten years, and the aggregate amount of debts so contracted

shall not at any time exceed twice the rate upon the valuation last herein mentioned; provided, that this section shall not apply to counties having a valuation of less than one million of dollars."

Messrs. TELLER and ORAHOOD and MARKHAM and DILLON, for petitioner.

Mr. D. E. PARKS, County Attorney of Lake County, and Mr. H. B. JOHNSON, for respondent.

HELM, J. Under the replication, and the demurrer thereto, counsel argue and submit for adjudication the following questions, viz.: *First*, does the limitation imposed upon county indebtedness by section 6, article 11, of the state constitution, include debts contracted by operation of law? *Second*, can counties which have reached the constitutional limit of indebtedness, and have issued warrants in excess thereof, meet their current expenses as they arise by assignments of the annual revenue (thus appropriating the whole of such revenue, if necessary) accruing from taxes levied, but uncollected?

I. The section of the constitution above mentioned was, at a former stage of the pleading in the case at bar, carefully considered by this court. *People v. May, ante,* p. 80. It was then held that the expression in said section, "and the aggregate amount of indebtedness of any county for all purposes * * * shall not at any time exceed twice the amount above herein limited, unless," etc., operates as a "plain limitation of county indebtedness, irrespective of its form." Counsel for petitioner were at that time contending that this limitation applies only to debts contracted "by loan." Treating our opinion as decisive against that particular construction of the language in question, they now ask us to say that the inhibition reaches such debts only as are the result of voluntary contracts made by the county authorities. They seek to have us distinguish between the *purpose* for

which a debt is created and the *manner* of its creation. In other words, if we rightly understand their position, they assert that, as between two items of county expenditure which are equally necessary, the constitutional limitation of indebtedness having been reached, a debt created for one by the voluntary contract of the commissioners would, conceding the correctness of our former opinion, be forbidden and void, while a debt in connection with the other, directly resulting from action under legislative enactment, might be perfectly valid.

Should the position of counsel be sustained? The phrase "for all purposes." seems to include debts without regard to the method of their contraction.  The language itself does not discriminate between purposes governing *legislative action*, and purposes controlling the conduct of *county authorities*.  It apparently covers every kind of indebtedness, voluntarily authorized or voluntarily contracted.  Whether the same be incurred in one way or another, whether created for what may be termed necessary running expenses, or in the consummation of other legitimate municipal objects, the inhibition appears to be equally applicable.  The constitutional limitation having been reached, a debt for the statutory fee of an officer, or a statutory liability in connection with any other municipal employment or expense, is apparently as much inhibited as is indebtedness for labor performed or materials furnished under contract with the commissioners.  Such we say is, in our view, the plain import of the language referred to.  And, unless the same section or other sections of the constitution contain provisions inconsistent with this view, or unless there exist some objection so cogent as to demonstrate that the framers of the constitution could not have foreseen and intended such a construction, its adoption becomes a legal necessity.

We shall consider briefly the principal reasons advanced by counsel for petitioner to support their views in the premises.  We preface such consideration, however,

with the suggestion that all debts binding upon counties are authorized by law. The county authorities exercise no power that is not conferred by the constitution or by the legislature. They make no municipal contract, and incur no municipal liability, that does not find its warrant, directly or indirectly, in express legislative or constitutional enactment. Any action on their part which is not thus sanctioned would be *ultra vires*, and of no binding force as against the corporation. Hence it may truly be said that debts arising from express contract with the county commissioners are indirectly incurred by operation of law.

In the first place, we are told that such a construction of the provision in question as the one suggested would produce conflicts between different parts of the constitution itself; that since this construction of section 6 disables certain counties from incurring debts for the payment of officers' fees, and other necessary running expenses, the business of such counties will not be efficiently transacted, and they will, to a great extent, be shorn of their usefulness. Thus, say counsel, the beneficent constitutional provisions relating to county organization and government will, as to certain counties, be largely, if not completely, neutralized. The argument *ab inconvenienti* is also appealed to; and the serious public disasters that would result from the stoppage of the wheels of county government, because of the inability to incur debts, are strongly depicted.

If there were room in the language before us for judicial construction, and if counsel's assumptions were true, these arguments would receive great consideration. But the validity of the constitutional provisions to which counsel refer does not depend upon the ability of counties to create indebtedness; nor do the apprehended consequences necessarily follow from the inhibition against further liability. The constitutional provision before us simply prohibits "indebtedness" beyond a certain sum.

It does not limit the amount of *taxes* the county authorities shall levy to defray county charges for a given year. The members of the constitutional convention were not dealing with the subject of county expenses or expenditures, provided the county "pays as it goes." Their purpose was to protect the municipal credit, and to relieve the people of the oppressive burdens that always result from a large corporate indebtedness. If the running expenses are necessarily heavy, or if the people are inclined to extravagance, and indulge in what might be termed municipal luxuries, still the credit remains good, and the evils against which the convention legislated do not exist, provided these expenses, whether necessary or unnecessary, economical or extravagant, are paid when incurred. This provision, using the language of Mr. Justice ELBERT (*People v. May,* supra), "is simply a declaration that the county, within certain limits, shall live within its income, and not that its income shall be more or less." So far, therefore, as the constitution is concerned, without the privilege of incurring further indebtedness, sufficient funds may be raised for the payment of all current county expenses. We shall presently see that these funds can be thus applied, and hence that, regardless of indebtedness, all county business may be transacted as usual.

In this connection the case of *Potter v. Douglass,* 87 Mo. 239, relied upon by counsel, should perhaps be noticed. Important differences exist, in regard to the subject under consideration, between the constitutions of Missouri and Colorado. These differences are perhaps sufficient to justify the weight given in that case to the argument *ab inconvenienti,* which is the principal ground of the decision. But had the court been construing constitutional provisions precisely the same as our own, and had they held that debts contracted by operation of law were not within the limitation, we should decline to accept their position as controlling.

We are urged to again consider the effect of legislative and executive interpretation. This subject was discussed at some length in the opinion filed when the cause was submitted upon the demurrer and answer. To the views then expressed we shall add but a single suggestion. We may accede to counsel's request and apply the rule which gives significance to such construction, notwithstanding the apparent clearness of the language under discussion, and we may allow proper weight to such action of the legislature and the county officers as can justly be deemed interpretation by them adverse to our views; yet, after so doing, the considerations upon which we rely are not overcome and our conclusion remains unchanged.

It may be true, as counsel contend, that a judgment for damages against a county, growing out of the negligent or tortious conduct of its officers or agents, constitutes a liability regardless of its indebtedness. Such is the view taken, under a constitutional provision substantially similar in this regard, by the supreme court of Illinois. *Bloomington v. Perdue*, 99 Ill. 329. But this fact does not sustain the position urged upon us. It is clear that the language under consideration deals with indebtedness that is reasonably anticipated as a result of voluntary action by the legislature or county authorities— such indebtedness as springs from express or implied contracts. Involuntary liability, arising *ex delicto*, is a subject that is not contemplated by the provision.

In conclusion upon this branch of the case, we may inquire, Why should the constitutional convention have intentionally left unrestricted the amount of county indebtedness that might arise *by operation of law?* Experience had demonstrated, and the members of the convention knew, that through such an opportunity the wise purpose of the provision would be largely evaded. If there were no control of legislative discretion in the passing of laws which might operate to create county indebtedness, it is plain that the great evil under consider-

ation by the convention would be but imperfectly avoided. In view of the language used here as elsewhere in the constitution, we cannot suppose that, while the convention distrusted the wisdom of county authorities in the matter, they had unbounded confidence in the judgment of the legislature.   A limitation of county indebtedness, binding upon the legislature as well as the county authorities, was only a reasonable and a wise precaution.

II. We now turn our attention to the second question stated at the beginning of this opinion.   As already suggested, the constitution does not limit the power of county authorities in connection with the levy of taxes for county purposes.   The maximum amount to be thus raised is a subject left to the discretion of the legislature. That body has fixed a maximum rate, which is, in its judgment, amply sufficient to meet all reasonable current expenses.   Should the limit thus named, however, prove inadequate for this purpose, it is to be presumed the legislature will hasten to make the necessary increase. Hence there can be no real ground for the apprehension of great inconvenience, provided the annual income from taxes can be used in defraying the annual expenses. Upon this subject we entertain no serious doubt.   It is, we think, a sound doctrine that, though a municipal corporation be indebted to the constitutional limit, valid appropriations of its revenue may be made, in anticipation of the collection thereof, to meet the ordinary expenses of the current fiscal year.   *Grant v. City of Davenport*, 36 Iowa, 399; *State v. Medbery*, 7 Ohio St. 531; *Fuller v. Heath*, 89 Ill. 296; *State v. McCauley*, 15 Cal. 455; *Law v. People*, 87 Ill. 400; *Koppikus v. State Capitol Com'rs*, 16 Cal. 253; *People v. Pacheco*, 27 Cal. 207; *City of Springfield v. Edwards*, 84 Ill. 626.

These cases, it will be observed by inspection thereof, do not discuss the subject with reference to counties. But the constitutional provisions construed are substantially similar in this respect to the one before us, and we

have no hesitancy in applying the foregoing principle to such municipalities in Colorado.

There can be no *legal indebtedness* beyond the constitutional limit. After such limit is reached, therefore, warrants or other instruments representing supposed municipal liability are of no *legal* force or effect. The annual taxes cannot be collected at the beginning of the fiscal year, and hence necessary labor or materials can, in certain counties, seldom be paid for in cash when furnished. Therefore the question is, how shall the cost of such labor or materials be discharged without money in the treasury, and without incurring indebtedness? Upon this question the cases are not fully in accord. We shall leave counsel to examine for themselves the various decisions that have been rendered in other states, and proceed to give briefly *our* conclusions upon the subject.

If the written assignment of a portion of the incoming revenue be accepted *as payment in full* for labor or materials furnished to the county, no debt is incurred. Using the language of a decision cited above, "one thing is simply exchanged for another." Since, in such case, the assignee takes all the risk if the taxes are not collected, relying simply upon his right to compel the proper officers to perform their duty in the premises, no liability, contingent or otherwise, attaches to the county. But the taxes from which the revenue assigned is to accrue must have been levied previous to such assignment. It is a plain legal as well as business principle that no valid assignment can take the place of a fund that has no existence either in fact or in law. When appropriations of the kind above mentioned have been made of revenue to accrue from taxes previously levied, the sum thus appropriated is in legal contemplation already collected. *Grant v. Davenport, supra; Law v. People, supra.*

It is hardly necessary to remark that assignments made in *excess* of the amount covered by the annual levy would be clearly illegal.

Counties may provide, under the funding statute, for the payment of all outstanding orders constituting a legal indebtedness.. Such an indebtedness, therefore, when thus disposed of, does not interfere with the use of the current *general* revenue to defray the current expenses. And counties, in all cases, have the power to so adjust their affairs that valid warrants may issue in payment of such expenses as they accrue, provided, of course, that the transactions accord with the foregoing views regarding the creation of debts. We discover no constitutional objection to the county's securing a sum of money, in anticipation of such expenses, with which to defray them when incurred, the power so to do being previously conferred by statute, if the essential condition be complied with; that is to say, if the party advancing the money accept the county's assignment of uncollected revenue as *payment in full*. In such case there is still simply an "exchange of one thing for another." A part of the anticipated revenue is exchanged for *money*, instead of labor or materials.

But, whatever form the particular transaction may take, its effect must be that of an assignment *pro tanto*, without recourse, by the county, of the fund to accrue from the current levy of taxes, and the warrant or instrument of assignment must be expressly made payable out of the incoming revenue for the current year. Since all persons must know the law, it is not absolutely necessary that the assignment should state on its face that it is accepted in full satisfaction of the claim on account of which it is given, and that no liability is incurred by the county because of its issue. The instrument issues, is accepted, and must be construed, as though all constitutional and statutory provisions bearing upon its legality were expressly set out among its written or printed terms and conditions. *Fuller v. Heath, supra.*

The warrant now in controversy was issued after the constitutional limit of indebtedness had been reached by

the county.   It is general in form.   It does not purport
to be payable from any particular fund, or out of the rev-
enue from the taxes of any specified year.   Nor do coun-
sel claim, in the pleadings or argument, that, when the
instrument issued, it was the intention to restrict in any
manner the county's liability for the supposed indebted-
ness represented thereby.   This warrant cannot be treated
as an assignment under the views herein expressed.

The demurrer to the replication must therefore be
sustained.

*Demurrer sustained.*