[Civil No. 4463.   Filed September 28, 1942.]

[129 Pac. (2d) 312.]

SOUTHERN PACIFIC COMPANY, a Corporation, Appellant, v. MARICOPA COUNTY, a Political Subdivision and Municipal Corporation of the State of Arizona, Appellee.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. Richard F. Harless, County Attorney, and Mr. Leslie C. Hardy, Deputy County Attorney, for Appellee.

ROSS, J.—This action was brought by the Southern Pacific Company against Maricopa county and the tax collector thereof to recover the sum of $5,004.78 levied against it and paid in 1936 under protest, to be applied upon the bonded indebtedness of Buckeye Union High School District, through which its line of railroad passes. It claims its property is not liable for the tax and that it was levied and collected without authority of law.

The railroad company recovered judgment in part, from which no appeal has been taken. It was denied relief in part upon the facts appearing below, and has appealed.

On April 15, 1928, and while the boundaries of Common School District No. 33 and Buckeye High School District were identical, the latter district was bonded

by a vote of its property taxpayers for the sum of $38,000.

On July 1, 1929 Buckeye High School District enlarged its boundaries by adding thereto Common School Districts Nos. 25 and 47. This enlargement was effected by an order of the board of supervisors of Maricopa county as provided by law. Sec. 54-408, Arizona Code 1939. The district thereafter was known, as Buckeye Union High School District. On December 15, 1929, such Buckeye Union High School District voted another bond issue in the sum of $60,000, making a total bonded indebtedness of said district of $98,000. Thereafter, and before the year 1936, the Buckeye Union High School District was again enlarged by the board of supervisors to include therein Common School District No. 49.

In 1936 the tax levied and assessed against plaintiff's property in Common School District No. 25 to apply on the amount due and accrued interest on the bond issue of $38,000 amounted to $228.23; the tax levied and assessed against its property in Common School District No. 47 to apply on the amount due and accrued interest on both bond issues, or $98,000, amounted to $746.97, and in Common School District No. 49 to $753.60. It is these sums, among others, the taxpayer seeks to recover.

The plaintiff's position is that the Buckeye Union High School District could not be enlarged, as was done, without an affirmative vote of the qualified real property taxpayers of the common school districts at an election called for that purpose, and that, since such procedure was not had, the tax levies against its property were made without authority of law.

In *Southern Pacific Company* v. *Pima County,* 38 Ariz. 11, 296 Pac. 533, 534, this court, after a careful consideration of the same question and the law bearing thereon, held contrary to plaintiff's conten-

tion. Plaintiff asks us to reconsider the decision in that case. Its chief reliance, as set forth in its argument and assignments, is upon the wording of section 13, Article VII of the state Constitution, reading as follows:

"Questions upon bond issues or special assessments shall be submitted to the vote of real property taxpayers, who shall also in all respects be qualified electors of this state, and of the political subdivision thereof affected by such question."

From this language counsel for plaintiff contend that "unquestionably it was the intention of the framers of our Constitution to prevent the imposition of bond issues as distinguished from other indebtedness upon property without the vote of a majority of the real property taxpayers in the district affected." It would seem this contention is right and we agree with it. The bond issue of April, 1928, was voted by the real property taxpayers of the Buckeye High School District and such bonds were certainly an obligation of all the property of said district at the time they were voted and of property subsequently brought into such district. In other words, property establishing a situs in such district subsequent to the voting of the bonds was as much obligated to pay taxes to liquidate the bonds as property in the district at the time the bonds were voted. If the real property taxpayers of the Buckeye High School District were given the opportunity to vote on the bond issues, and the issues were authorized by the voters, the bonds would be a legal obligation of the district, and all the property therein at the time as well as all property brought into the district subsequently would be liable therefor. There is no question but that both bond issues received the affirmative approval of the real property taxpayers in said districts before they were issued—a literal compliance with said sec-

tion 13 of Article VII of the Constitution. Speaking of this section, in *Southern Pacific Company* v. *Pima County, supra,* we said:

"Section 13, *supra,* provides that questions upon bond issues shall be submitted to a vote of the property taxpayers who are qualified electors of the political subdivision of the state affected by such question. It is not contended that said school districts did not conform their action in incurring the indebtedness with the provisions of this section of the Constitution. The assent to the districts' incurring the indebtedness of a majority of the property owners of the districts legally entitled to vote at the time being confessed or admitted, the question is, Must the property of only those who assented, or had the opportunity to assent, be taken to pay the indebtedness, or may the property of others later brought into the districts by annexation in the manner provided by law be also taken to pay the indebtedness?

"Under the above provisions, the right and opportunity to vote on bond issues of a school district is limited to those legal voters who have property in the district at the time that will be subject to a tax to pay the bonds, and not those whose property is later by lawful methods incorporated into the district.

"And the fact that plaintiff's property was annexed to the school districts without its consent is immaterial. Subject to such constitutional limitations as may exist, the power of the Legislature over school districts is plenary. It may divide, enlarge, diminish, or abolish them at pleasure. *Pass School Dist.* v. *Hollywood City School Dist.,* 156 Cal. 416, 105 Pac. 122, 26 L. R. A., N. S. 485, 20 Ann. Cas. 87; *1 Dillon on Municipal Corporations,* p. 54; 24 R. C. L. 562, § 6."

See, also, *Skinner* v. *City of Phoenix,* 54 Ariz. 316, 95 Pac. (2d) 424; *Lowden* v. *Luther,* 190 Okl. 31, 120 Pac. (2d) 359.

■ Said section 13, Article VII, does not provide, directly or by reasonable implication, that property brought into a school district or a political subdivision shall not be liable for the legal debts of such units

thereafter contracted, or that such property is immune from liability for previous obligations of such political units. We adhere to our decision in *Southern Pacific Company* v. *Pima County, supra,* and refer to our opinion therein for a fuller discussion of the question.

In *Southern Pacific Company* v. *Pima County, supra,* it was suggested that paragraph 5272 Revised Statutes of 1913, might prevent the inclusion in a union high school district of territory located in and a part of an organized common school district. Such suggestion was not necessary to a decision of that case and, besides, it was not a correct statement of the law. All high school districts and union high school districts are made up of organized and functioning common school districts.

We are satisfied that the judgment of the trial court should be affirmed, and it is so ordered.

LOCKWOOD, C. J., and McALISTER, J., concur.