447 P.2d 268

Paul WEBB, B. C. Mahar and Leo T. Jansen, School Electors, Beaver Creek District No. 26, Appellants,

v.

Warner B. DIXON, County Superintendent of Schools of Yavapai County, Arizona; Marvin E. Rohrer; John J. Pruitt; and Bert Owens, constituting the Board of Supervisors of Yavapai County, Arizona; and Martha Butler; Robert Reeves; Kelvin Fox; Gladwin Clarke and Clifford Bingaman, constituting the Board of Trustees of Camp Verde Elementary School District No. 28 and also Camp Verde High School District No. 28, Yavapai County, State of Arizona, Appellees.

No. 1 CA–CIV 727.

Court of Appeals of Arizona.

Nov. 19, 1968.

Rehearing Denied Dec. 31, 1968.

Review Granted March 4, 1969.

David H. Palmer, Prescott, for appellants.

Eino M. Jacobson, County Atty., Yavapai County, Prescott, for appellees.

MOLLOY, Judge.

This appeal questions the validity of the annexation of Beaver Creek Common School District No. 26, Yavapai County, to Camp Verde Common School District No. 28, and to Camp Verde High School District No. 28, Yavapai County. Questions involving a temporary injunction in this action have been previously before the Supreme Court. See Webb v. Superior Court, in and for County of Yavapai, 103 Ariz. 110, 437 P.2d 426 (1968).

■ The first attack is directed at the sufficiency of the number of signers of the petition for the annexation of the Beaver Creek Common School District to the Camp Verde Common School District. Under A.R.S. § 15–406 "[a] majority of the school electors of a school district * * *" may petition for annexation to another district. The parties on this appeal do not agree as to the class of persons designated as "school electors" of the district.

A.R.S. § 15–473(A), as amended, is pertinent:

"A person who is *a registered elector of the state, and* who has been a *resident of the school district six months immediately preceding the election,* is qualified to vote at an election for trustee of the school district in which he resides. For the purposes of this title, the terms 'qualified school elector', 'qualified elector', 'school elector', or 'elector' shall have the qualifications prescribed in this subsection." (Emphasis added)

The appellants, who are objecting to the annexation, contend that, under the above definition, any person who is formally registered to vote in the State of Arizona, regardless of the county of his registration, may participate in a school election if he has been a resident of that school district six months immediately preceding the election. The appellees, on the other hand,

contend that, in order to be considered a "registered elector of the state," one must be eligible to vote and that one cannot be so qualified if he is registered outside of the county and precinct in which he has resided for six months.

We agree with this latter contention. We believe that it is implicit, in the above-quoted statute, that a "registered elector of the state" has reference only to a person who is registered in such a manner as to be qualified to vote under the laws of this state. Under our statutes, pertaining to elections and electors, we find a general scheme that requires a person to be registered, with exceptions which appear to have no relevance here, in the precinct of his residence:

6 A.R.S. § 16–101:

"A. Every resident of the state is qualified to become an elector and may register to vote at all elections authorized by law if he:

*   *   *   *   *   *

"3. Will have been *a resident* of the state one year and *of the county and precinct in which he claims the right to vote* thirty days next preceding the election." (Emphasis added)

6 A.R.S. § 16–102:

"*No person shall be permitted to vote unless* his or her name appears as a qualified elector in both the general county register and *in the precinct register or list of the precinct in which such person resides,* except as provided in § 16–109." (Emphasis added)

6 A.R.S. § 16–109:

"A registered elector who removes from one precinct to another during the period when registrations are closed preceding either a primary or general election shall be deemed to be a resident and registered elector of the precinct from which he removed until the date of reopening registrations."

6 A.R.S. § 16–110, as amended:

"An elector who within an open registration period preceding a primary or

general election removes from the precinct in which he is registered to another precinct shall, *before being permitted to vote,* either appear before the county recorder, deputy registrar or a justice of the peace and re-register, supplying in addition to his new address the address indicated by the record of his prior registration or transfer his registration by the method prescribed in § 16–147." (Emphasis added)

Under our statutes, registration is "open" at all times except that, during the four months preceding a primary election, it is "closed" for primary election purposes and from the seventh Monday preceding a general election to the time of the general election, it is "closed" for general election purposes. A.R.S. § 16–107, as amended. There is no time when registration is "closed" for as long as six months.

■ The only persons suggested by the appellants who should be included in the category of school electors who are not registered in a precinct in the Beaver Creek District are those who have moved their residence into the subject school district, but who retain their registration in the precinct of their old residence " * * * for the convenience of distance to travel or because of rugged terrain * * *"[1] These are not excuses recognized by statute for not registering in the precinct of one's residence. Under the above-quoted statutes, such persons would not be eligible to vote in any election conducted under the laws of the state. We do not believe the legislature intended to grant to such ineligible voters the right to vote in school elections.

Our Supreme Court has interpreted the words "qualified electors" and "elector," as contained in constitutional provisions pertaining to the right to petition for initiative and referendum, as designating

" * * * those legally entitled to vote * * *" Ahrens v. Kerby, 44 Ariz. 337, 343, 37 P.2d 375, 378 (1934). That this is the approach taken generally by the courts of this country is indicated by the following language taken from one of two decisions cited by and relied upon by the appellants:

"The term 'elector' is a technical, generic term descriptive of a citizen having constitutional and statutory qualifications *that entitle him to vote* in any school district of the state of which he is a resident." (Emphasis added)

Cathay Special School Dist. No. 3, Wells County v. Wells County, 118 N.W.2d 720, 726 (N.D.1962).

The other decision relied upon by the appellants is Zweifel v. City of Milwaukee, 188 Wis. 358, 206 N.W. 215 (1925). These decisions have no application here since neither one holds that a person not legally entitled to vote is an "elector" for any purpose. We hold that the trial court properly decided the "registered elector" question.

■ The second challenge to the annexation is that the petitions were presented to the governing board of the Camp Verde Districts at a time when no effective petitions of this type could be filed, that is, on June 24, 1966. Both A.R.S. §§ 15–406 and 15–407 provide that the governing board of the district to which annexation is proposed shall receive the petition of annexation and, if approved by it, the petition shall be transmitted to the county superintendent of schools. Thereafter, the electors of the district to which annexation is proposed are given, under each statute, fifteen days to file a protest against the annexation.[2] Both statutes provide that "[o]n and after the *following* July 1 * * *" (emphasis added) if there are no valid protests as provided by law, the

---

1. Quote is from appellants' reply brief, at 10.

2. Under A.R.S. § 15–406, " * * * a majority of the school electors representing the district * * *" may so protest,

and under A.R.S. § 15–407, " * * * a majority of the electors voting in the high school district at the last preceding school election * * *" may file such a protest.

petitioning district shall become a part of the district to which it seeks annexation.

The appellants argue that there was insufficient time between June 24, 1966, and July 1, 1966, to permit the protests allowed by these sections to be filed. With this, we agree, but we see no reason to outlaw these annexations for this reason. Obviously, the word "following," in the above-quoted statute, means the first July 1 after the expiration of the fifteen-day protest period. Under this interpretation, these annexations would have become effective on July 1, 1967, Goren v. Buena High School Dist. of Cochise County, 91 Ariz. 348, 353, 372 P.2d 692 (1962), were it not for the stipulations of the parties, which appear to have made them sooner effective. See Webb v. Superior Court, in and for County of Yavapai, 103 Ariz. 110, 437 P.2d 426 (1968).[3]

The appellants further challenge this annexation on the basis that no written judgment was ever signed by the trial judge. A proposed form of judgment upholding the annexations, filed August 23, 1966, had been objected to by the appellants because there were no findings of fact and conclusions of law. Subsequently, on April 7, 1967, the objections to the judgment were denied, but the written judgment itself was never signed. Thereafter, findings of fact and conclusions of law were signed and filed by the court on May 8, 1967. This document terminated with this verbiage:

"3. That Plaintiffs' Complaint be dismissed.

"4. That Defendants have Judgment on Plaintiffs' Complaint.

"Let Judgment be entered accordingly."

■ While ordinarily, findings of fact and conclusions of law do not serve as a judgment, see Sheridan County Electric Co-op. v. Anhalt, 127 Mont. 71, 257 P.2d 889 (1953); Scott v. Manley, 240 Iowa 722, 36 N.W.2d 474 (1949); and 49 C.J.S. Judgments § 4, at 28, nevertheless, when the intent of the court to adopt such a document as its final judgment is apparent, conclusions may be regarded as a final judgment. Woods v. Nicholas, 163 F.2d 615 (10th Cir. 1947).

■ Whether the above-stated conclusions of law indicate with sufficient clarity the court's intent to make this document a final judgment, we are not obligated to decide. This is so, because when this case was brought before the Supreme Court of our state on writ of certiorari, in Webb v. Superior Court, in and for the County of Yavapai, supra, the Court stated:

"Findings of fact and conclusions of law were signed by the court on May 3, 1967 and filed with the clerk on May 8, 1967. A written judgment was also entered and filed on May 8, 1967."

103 Ariz. 110, 437 P.2d 428.

This statement by our Supreme Court has never been modified, and we believe it now constitutes the "law of the case," Rail N Ranch Corporation v. State, 7 Ariz.App. 558, 441 P.2d 786 (1968), and constitutes binding authority that the above-quoted language is sufficiently definite to constitute a judgment. If we are in error in so regarding this decision of our Supreme Court, then we base our refusal to dismiss this appeal on the view taken by our Supreme Court in State v. Birmingham, 96 Ariz. 109, 392 P.2d 775 (1964). In that case, it was decided that, even though the judgment did not comply with the mandate of Rule 58(a) as amended Rules of Civil Procedure, 16 A.R.S., which requires that "[a]ll judgments shall be in writing and signed by a judge * * *" nevertheless, the judgment would be considered as an appropriate basis for review, because of the " * * * public importance * * *"

3. At time of oral argument, the appellees' attorney stated, without response from opposing counsel, that these annexations were actually not put into effect until July 1, 1968.

**458**

(96 Ariz. 113, 392 P.2d 775) of the question there presented.[4]

■ The last contention made by the appellants is that A.R.S. § 15–406 is unconstitutional, in that it permits the subjection of the annexed territory to the bonded indebtedness of the district to which it was annexed, without a vote of the real property taxpayers, as allegedly required by article 7, § 13, of the Arizona Constitution.[5]

To uphold this contention would be to overrule two previous decisions of our Supreme Court, Southern Pac. Co. v. Pima County, 38 Ariz. 11, 296 P. 533 (1931), and Southern Pac. Co. v. Maricopa County, 59 Ariz. 369, 129 P.2d 312 (1942). This court has no authority to do so. McKay v. Industrial Commission, 103 Ariz. 191, 438 P.2d 757 (1968).

■ The appellants also argue that A.R.S. § 15–406 is rendered unconstitutional by reason of an amendment adopted to A.R.S. § 15–407 by Chapter 159 of the Laws of 1954. Under this amendment, when a school district is to be annexed to a high school district which has a bonded indebtedness, the majority of the real property taxpayers of the annexed district must approve the annexation. There has been no similar amendment to A.R.S. § 15–406 pertaining to annexation to a common school district.

The argument is made that this amendment renders A.R.S. § 15–406 in violation of the due process (art. 2, § 4, Ariz.Const.) and equal protection (art. 2, § 13, Ariz. Const.) constitutional guarantees. We have

been unable to follow this argument. The *Southern Pacific* cases, supra, categorically hold that a school district can be annexed to either a common school district or a high school district, and become subject to the bonded indebtedness of such district, without a vote of the property taxpayers of the annexed district. As we see it, the fact that the legislature has subsequently seen fit to condition an annexation to a bonded *high school* district to a vote of the taxpayers of the district to be annexed does not in any way affect the constitutionality of the previously declared constitutional statute pertaining to annexations to a *common* school district. If there is no reasonable basis for the distinction made between common and high school districts, it would be the legislation making such distinction—that is, the 1954 amendment—which must fall. People ex rel. v. Greer College, 302 Ill. 538, 135 N.E. 80 (1922).

There is no contention made here that an election under the 1954 amendment should or should not have been conducted. The only bonded indebtedness shown by this record is that pertaining to the Camp Verde Common School District. Hence, the constitutionality of the 1954 amendment is not before us, and we do not pass upon it.

Judgment affirmed.

HATHWAY, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).

---

4. Here, at time of oral argument, counsel for both the appellants and the appellees suggested that this court should proceed to decide this question at this time, rather than delay the proceedings while a written judgment might be entered, because of the necessity for an early ruling.

5. "Questions upon bond issues or special assessments shall be submitted to the vote of real property tax payers, who shall also in all respects be qualified electors of this State, and of the political subdivisions thereof affected by such question." As amended, election Nov. 4, 1930, eff. Dec. 1, 1930.
1 A.R.S. art. 7, § 13, Ariz.Const.